**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 16 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DANIEL LOREN JENKINS, | No.    22-35341 |
| Petitioner-Appellant, | D.C. No. 2:16-cv-00247-YY |
| v. | |
| ERIN REYES, Superintendent Two Rivers Correctional Institution, | MEMORANDUM[*] |
| Respondent-Appellee. | |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernández, Chief District Judge, Presiding

Argued and Submitted April 3, 2024
Portland, Oregon

Before:  OWENS and FRIEDLAND, Circuit Judges, and SILVER,[**] District
Judge.

Oregon state prisoner Daniel Loren Jenkins appeals from the district court's

denial of his 28 U.S.C. § 2254 habeas petition challenging his 2005 conviction for

solicitation to commit aggravated murder.  Applying the Antiterrorism and

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]    The Honorable Roslyn O. Silver, United States District Judge for the
District of Arizona, sitting by designation.

Effective Death Penalty Act ("AEDPA"), the district court, as relevant here, denied habeas relief (and a certificate of appealability) on Jenkins's ineffective assistance of counsel and bill of attainder claims. We granted a partial certificate of appealability on the ineffective assistance of counsel claim. As the parties are familiar with the facts, we do not recount them here. We affirm.

1.      Jenkins's ineffective assistance of counsel claim fails the "'doubly' deferential review" under the combination of *Strickland v. Washington*, 466 U.S. 668 (1984), and AEDPA. *Michaels v. Davis*, 51 F.4th 904, 939 (9th Cir. 2022) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)), *petition for cert. filed*, No. 23-5038 (U.S. June 30, 2023).

To establish ineffective assistance of counsel, a defendant must show that "counsel's performance was deficient" and "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. *Strickland* instructs that "[t]he proper measure of attorney performance" is "reasonableness under prevailing professional norms." *Id.* at 688. The Supreme Court has not "define[d] with greater precision the weight to be given to recognized canons of ethics, the standards established by the state in statutes or professional codes, and the Sixth Amendment, in defining the proper scope and limits on [attorney] conduct." *Nix v. Whiteside*, 475 U.S. 157, 165-66 (1986).

Under AEDPA, we may grant relief only if the state court's adjudication

2

"resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2). The Oregon Circuit Court's denial of Jenkins's petition on collateral review provides the "relevant rationale" under AEDPA. *See Wilson v. Sellers*, 584 U.S. 122, 125 (2018).

The Oregon Circuit Court's decision denying post-conviction relief was neither contrary to, nor involved an unreasonable application of, clearly established law. The Oregon Circuit Court dismissed Jenkins's claim "for all of the reasons" offered by the state. Those reasons included:

> Before disclosing petitioner's actual threat of harm to the Bidwells and their children, Lynne Dickison took all available steps to determine whether she was ethically required to make that disclosure. The Oregon State Bar investigated the matter and found "no credible evidence of misconduct" by Ms. Dickison.

It was not unreasonable for the Circuit Court to conclude that Dickison did not depart from the applicable ethical norms. Dickison reasonably believed that she could disclose the communication under professional norms prevailing at the time and conducted a reasonable investigation and inquiry before coming to that conclusion. *See McClure v. Thompson*, 323 F.3d 1233, 1245-46 (9th Cir. 2003) ("Reasonableness of belief may be strongly connected to adequacy of investigation

3

or sufficiency of inquiry in the face of uncertainty."); *Michaels*, 51 F.4th at 931-33, 936-37.

Disciplinary Rule ("DR") 4-101(C)(3) of the 1999 Oregon Code of Professional Responsibility permitted the disclosure of "[t]he intention of the lawyer's client to commit a crime and the information necessary to prevent the crime." In her own professional judgment, Dickison understood Jenkins to have a "clear and serious intent at that time to follow through" with crimes of violence against Bidwell, his wife, and their children. Dickison also credited Dr. Colby's "professional opinion" that "given his testing of Mr. Jenkins he believed that Mr. Jenkins would carry out those threats as soon as he was able to."

Based on "the statement to Dr. Colby, Dr. Colby's opinion about dangerousness, Dr. Colby's opinion about intent to follow through, the police reports in this case and the history of this case, [and] the defendant's [violent] personal history," Dickison could have reasonably believed that DR 4-101(C)(3) permitted disclosure. Further, the Oregon State Bar had advised her that she could ethically disclose Jenkins's threats as long as she "believed that they were viable."

Jenkins counters that Dickison's letters to the State Bar—acknowledging that Jenkins's "release was not imminent nor contemplated"—indicate that her disclosure was unreasonable. But even if Jenkins's release from custody were not imminent, the record indicates that Dickison was concerned that Jenkins would be

4

able to "reach[] somebody in the outside and pay[] them to hurt somebody or kill somebody" or that he "might have contact with someone inside the jail who would then do his bidding once they were released." Dickison's concern was especially reasonable because Jenkins had been charged with soliciting murder prior to making the threats in question.

Dickison conducted a thorough and thoughtful inquiry before choosing to reveal the threats. *See McClure*, 323 F.3d at 1245-46. Prior to her disclosure, Dickison 1) had a law student at her firm investigate the ethical code; 2) called the Oregon State Bar for advice; 3) talked to her boss; and 4) asked the trial court judge whether (hypothetically) she could disclose. *See id.* at 1246. The Oregon Circuit Court reasonably denied Jenkins's claim on the ground that Dickison "took all available steps to determine whether she was ethically required to make that disclosure." Jenkins does not point to any case that would have required Dickison to consult with her client prior to disclosure.

Jenkins argues that the fact that the Oregon Court of Appeals already held that Jenkins's statements to Dr. Colby "were protected by the attorney-client privilege," *see State v. Jenkins*, 79 P.3d 347, 348 (Or. Ct. App. 2003), *opinion adhered to as modified on reconsideration*, 83 P.3d 390 (Or. Ct. App. 2004), indicates that Dickison's performance was necessarily deficient. But whether a

5

state court may have so ruled as a matter of evidentiary law does not pre-determine this court's analysis of the Sixth Amendment question under *Strickland*.

Though the relevant provision of the 1999 Oregon Evidence Code, § 503(4)(a), was stricter than DR 4-101(C)(3)—allowing disclosure only where professional services were "sought or obtained to enable or aid anyone to commit or plan to commit" a crime—Dickison could have reasonably thought that the Code of Professional Responsibility permitted her disclosure of Jenkins's statements regardless of whether they could later be used against him as a matter of state evidentiary law. *See Michaels*, 51 F.4th at 936 (inquiring into the existence of a "plausible exception to the attorney-client privilege *or* the duty of confidentiality under which" an attorney "might have reasonably been acting" (emphasis added)).

2.    We decline to expand the certificate of appealability to include Jenkins's bill of attainder claim. *See* 9th Cir. R. 22-1(e). Jenkins has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Oregon Evidence Code § 504-5 neither imposed punishment on Jenkins nor was applied to him absent a judicial trial. *See Selective Serv. Sys. v. Minn. Pub. Int. Rsch. Grp.*, 468 U.S. 841, 846-47 (1984).

**AFFIRMED.**